HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KENNETH TULLEY,<br><br>                    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA and U.S. PROTECT CORPORATION,<br><br>                    Defendants. | Case No. C09-5128-RBL<br><br><br>ORDER ON SUMMARY JUDGMENT<br>[Dkt. #s 30, 38, 40, 58] |

THIS MATTER is before the court on Plaintiff Tulley's Motion for Partial Summary Judgment [Dkt. #30], Defendant USProtect Corporation's Motion for Leave to Amend Answer [Dkt. #38], and Defendant United States of America's Cross-Motion for Summary Judgment [Dkt. #40]. The case arises from a March 11, 2007 incident at McChord Air Force Base, where employees of USProtect ("USP") guarding a base entrance deployed a pop-up security barrier shortly after waving Tulley through the entrance, resulting in physical injuries to Tulley and damage to his car.

Tulley's Amended Complaint [Dkt. #11] seeks money damages for the personal injuries and property damage proximately caused by Defendants' negligence. Tulley seeks Partial Summary Judgment [Dkt. #30] on the issues of USP's liability and his lack of contributory negligence.

Order - 1

USP argues that it is not vicariously liable for the tortious conduct of former employee Jesus Martinez, and that both Tulley's and the United States' negligence contributed to Tulley's injuries. USP seeks Leave to Amend its Answer [Dkt. #38], seeking to add an affirmative defense based on the contributory fault of others, namely Martinez, and a cross-claim for damages against the United States based on comparative negligence.

The United States' Cross-Motion for Summary Judgment [Dkt. #40] seeks dismissal of all claims against it, arguing that the federal government is not liable for the negligence of USP employees under the independent contractor exception to the Federal Tort Claims Act, and that any negligence by the United States did not cause Tulley's injuries. The United States also joins Tulley's motion against USP [Dkt. #30], and has filed a Stipulated Motion for Continuance of Trial [Dkt. #58] because of a scheduling conflict.

For the reasons that follow, Tulley's Motion for Partial Summary Judgment with respect to USP's liability and Tulley's lack of comparative fault is GRANTED. USP's Motion for Leave to Amend Answer is DENIED. The United States' Cross-Motion for Summary Judgment is GRANTED, and all claims against the United States are DISMISSED with prejudice. The United States' Stipulated Motion for Continuance of Trial is DENIED as moot.

**I.    FACTS**

At all times relevant to this case, USP contracted with the United States to provide guard services at McChord Air Force Base. These services included manning the Barnes Gate (or "G3") entrance to the base. Approximately 50 yards from the Barnes Gate guard shack is a pop-up security barrier, which is controlled from inside the shack and is used to stop vehicles from entering the base without authorization.

On March 10, 2007, an unauthorized car sped through Barnes Gate and onto the base without stopping, an incident known as a "gate runner." Two USP employees, Jesus Martinez and Michael Wheeler, were on duty guarding the gate when the car drove by, but Martinez was outside the guard shack and Wheeler was in the restroom. The guards subsequently received a visit from the chief of the Air Force Security Forces Unit, who instructed them that, regardless

of the circumstances, they were to treat every gate runner the same and deploy the barrier no matter what. [*See* Tonglao Dec., Dkt. #54, at Ex. 1].

The next day, Tulley drove his car to the Barnes Gate entrance of McChord, where the same two USP guards as the previous day were on duty. Wheeler manned the barrier controls inside the guard shack, while Martinez was stationed outside the shack inspecting cars as they pulled up to the gate. After Martinez screened Tulley and waved him through the gate, he entered the guard shack and jokingly exclaimed "Code-12" in a serious tone of voice. Code-12 means a gate runner is in progress. Pursuant to the explicit instructions issued the preceding day, Wheeler immediately deployed the pop-up barrier, not recognizing that Martinez's exclamation was a joke[1]. Tulley's car crashed into and over the barrier, resulting in injury to him and extensive damage to his car.

**II.    DISCUSSION**

**A.    Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

---

[1] USP admits that Martinez's "Code-12" exclamation was a joke, and that it caused Wheeler to deploy the barrier. [*See* Dkt. #53, Response].

**B.     Liability of USP**

**1.     Martinez's Negligence**

Tulley claims that USP is liable for his injuries because they were caused by the negligent conduct of Martinez, a USP employee. "Negligence" is defined in the Restatement of Torts as "conduct that falls below that standard established by law for the protection of others against unreasonable risk of harm." Restatement (Second) of Torts § 282 (1965). The four elements required to prove a negligence claim are (1) the existence of a duty owed to the plaintiff by the defendant, (2) the defendant's breach of that duty, (3) resulting injury to the plaintiff, and (4) proximate causation between the breach and the injury. *See, e.g., Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wash.2d 601, 618 (2009). Reasonable minds cannot disagree that USP guards had a duty to avoid exposing individuals entering the base to unreasonable risk of harm. It is also clear that Martinez breached that duty by making his untimely joke, which proximately caused the barrier deployment and in turn the resulting injuries to Tulley.

USP contends that Tulley was comparatively negligent for the crash because he was driving at a speed in excess of the posted limit when it occurred. USP provides no admissible evidence that Tulley was speeding. During his testimony, Wheeler speculated that Tulley had been speeding, but this was based on rough estimations of how long it normally takes to drive from the guard shack to the barrier, how quickly Martinez played the joke after waving Tulley through, and how far off the ground the barrier had risen when Tulley's car struck it. [*See* Dkt. #54, Tonglao Dec., at Ex. 1]. Wheeler did not actually see Tulley driving toward the gate, as he was positioned with his back facing that direction. *Id*.

Washington courts have consistently held that excessive speed might not be the legal cause of a collision, even if it is a cause in fact:

> [A] claimant can demonstrate cause in fact by showing that "but for" the favored driver's speed, the favored and disfavored drivers each would have reached (and safely crossed) the point of impact at a different time (*i.e.,* the vehicles "would have cleared", or the vehicles "would have missed")[2]. However, a claimant cannot

---

[2] Although *Mills* addressed the collision of two cars, the same principles of the causation of speeding apply here. In this case, the "favored driver" was Tulley and the "disfavored driver" was the pop up barrier.

> demonstrate legal cause by showing only this much. Virtually without exception, the authorities hold that if excessive speed does no more than bring the favored and disfavored drivers to the same location at the same time, the excessive speed is "remote" rather than "proximate", and causation is not established.

*Channel v. Mills*, 77 Wash.App. 268, 277 (Div. 2, 1995).

Tulley was authorized to enter the base and to drive down the road over the flattened barrier. The barrier was negligently deployed, and therefore was the only proximate cause of Tulley's injuries, as a matter of law.

### 2. Respondeat Superior Liability

Tulley claims that USP is vicariously liable for Martinez's negligent conduct because it was carried out while he was working as a USP guard. USP contends that Martinez's joke exceeded the scope of his employment.

Under the doctrine of respondeat superior, an employer may be liable for its employee's negligence in causing injuries to third persons if the employee was acting within the "scope of employment" at the time of the occurrence. *Rahman v. State*, 150 Wash.App. 345, 350 (Div. 2, 2009) (*citing Breedlove v. Stout*, 104 Wash.App. 67, 69 (Div. 1, 2001)). Washington courts have long (if long-windedly) held that an employer is liable for the acts of an employee even when the acts were largely self-serving:

> [W]here the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business the employee was actually engaged in when a third person was injured, and the employer will be held responsible unless it clearly appears that the employee could not have been directly or indirectly serving his employer; also the fact that the predominant motive of the employee is to benefit himself does not prevent the act from being within the course or scope of employment, and if the purpose of serving the employer's business actuates the employee to any appreciable extent, the employer is subject to liability if the act otherwise is within the service.

*McNew v. Puget Sound Pulp & Timber Co.*, 37 Wash.2d 495, 497-498, (1950). More succinctly, "an employer may be liable for the negligent acts of his employee, although such act may be contrary to instructions." *Dickinson v. Edwards*, 105 Wash.2d 457, 470 (1986) (*citing Greene v. St. Paul-Mercury Indem. Co.*, 51 Wash.2d 569, 573 (1958)).

USP contends that Martinez was not acting within the scope of his employment when he played his joke because it did not further any interest of USP or the United States. [*See* Dkt. #46, Response (*citing Thompson v. Everett Clinic*, 71 Wash.App. 548, 552 (Div. 1, 1993))].

There are very few, if any, situations in which an employee furthers the interests of his employer by negligently injuring a third party. The doctrine of respondeat superior is well established and precisely tailored to address such incidents of employee negligence. While Martinez's actions were only meant to benefit himself, it was the authority provided by his position as USP guard which enabled him to cause the barrier to be deployed. Yelling "Code-12" as a vehicle enters the base could certainly have been done to serve his employer, and in this case was contrary to USP instruction only because of why it was done. Martinez was acting within the scope of his employment when he negligently injured Tulley, and, accordingly, USP is liable for those injuries as a matter of law.

Even viewing the evidence in the light most favorable to USP, no reasonable fact finder would disagree that USP's employee was negligent, that USP is liable for that negligence, and that Tulley was not at fault. Therefore, Tulley's motion for partial summary judgment regarding USP's liability and Tulley's lack of comparative negligence is GRANTED.

    **C.**    **United States' Liability**

    **1.**    **Independent Contractor Exception to the FTCA – Vicarious Liability**

USP and Tulley claim that the United States is vicariously liable for Martinez's negligence under the Federal Tort Claims Act. The United States seeks summary dismissal of both Tulley's and USP's claims against it, arguing that it is immune from liability for the negligence of USP employees because they are government contractors.

The United States can be sued only to the extent that it has waived its sovereign immunity. *See, e.g., U.S. v. Orleans*, 425 U.S. 807, 814 (1976). Under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, the United States is liable for the torts of federal employees acting within the scope of their employment. Contractors with the United States are expressly excluded from the FTCA definition of federal employees, 28 U.S.C. § 2671, and thus the

FTCA waiver of United States sovereign immunity does not apply for torts committed by a government contractor.

It is undisputed that USP contracted with the United States to provide guard services, but this alone does not render the guards contractors for FTCA purposes. The distinction hinges on the amount and type of government supervision, as "[t]here must be substantial supervision over the day-to-day operations of the contractor in order to find that the individual was acting as a government employee." *Letnes v. U.S.*, 820 F.2d 1517, 1519 (9th Cir. 1987). This type of supervision is evinced by government control over a contractor's detailed physical performance. *Id*. The Ninth Circuit held that a pilot flying for the United States Forest Service was a government employee because he operated under the detailed control and direction of a federal Fire Control Officer, who was in charge of each flight and told the pilot where and when to go, what to do, and the minimum permitted altitude. *U.S. v. Becker*, 378 F.2d 319, 322-323 (9th Cir. 1967). In other words, the pilot was routinely "subject to close supervision and control in flight" by government officials. *Id*. at 322.

On the other hand, "[c]ontractual provisions directing detailed performance generally do not abrogate the contractor exception." *Autery, et al. v. U.S.*, 424 F.3d 944, 957 (9th Cir. 2005). The United States may fix specific and precise conditions on a contractor's work to implement federal objectives without becoming liable for his negligence. *Orleans,* 425 U.S. at 816. Detailed government inspections and regulations of a contractor's work are not evidence of an employee relationship, nor is the government's ability to compel a contractor's compliance with federal regulations. *Letnes*, 820 F.2d at 1519. The Ninth Circuit distinguished *Becker* in *Letnes*, holding that a pilot flying for the Forest Service was a government contractor because contractual provisions specifying maintenance requirements and procedures, maximum work hours, pilot certification requirements, and detailed equipment conditions were designed to secure federal safety objectives, not to control the detailed physical operation of the plane. *Id*. Further, "[t]he government's ability to tell [] pilots where the fire was and where to drop the fire retardant is insufficient to indicate supervision over the physical details of the pilots' daily operations." *Id*.

Viewed in the light most favorable to USP and Tulley, the evidence establishes that in 2006 Air Force officials at McChord implemented pop-up barrier operating instructions for the USP guards, along with a training plan to teach the guards how to comply with the terms of USP's contract. At any time, government officials could inspect the performance of USP employees to ensure compliance with the terms of the contract, and had the authority to compel compliance with federal regulations and objectives. [*See* Dkt. #42, Williams Dec.]. Pursuant to their training and operating instructions, USP guards exercised their independent sound judgment when responding to emergent situations. Specifically, they were instructed to deploy the pop-up barriers when they believed it was a reasonably necessary measure given the immediate circumstances. [*See* Dkt. #43, Chan Dec., at Ex. 3]. USP "exercised exclusive supervisory control over its employees on a day-to-day basis…[and] had sole discretion over the scheduling, discipline, performance evaluations, salary, hiring, and firing of its employees." [Dkt. #42, Williams Dec.].

In sum, the Air Force provided contractual conditions, protocols, policies, and the like for USP guards to follow, while leaving most day-to-day decisions regarding their actual physical performance in the hands of USP discretion and the guards' independent judgment.

Like the situation in *Letnes*, the United States supervision of USP employees was primarily through guidelines and contractual provisions, implemented to ensure compliance with federal regulations and objectives. The government did not dictate the guards' detailed physical conduct on a daily basis, as it did for the pilot in *Becker*. Therefore, the United States did not exercise the requisite "substantial supervision over the day-to-day operations" of USP guards to render them government employees. *Letnes*, 820 F.2d at 1519. Rather, the guards were independent contractors of the federal government, and accordingly the United States is not liable for their tortious conduct under the FTCA contractor exception.

  **2.  United States' Training – Direct Liability**

USP and Tulley claim that the United States is directly liable for Tulley's injuries because it failed to properly train the USP guards to perceive a credible threat and to recognize when to deploy the pop-up barrier. The United States contends that inadequate training does

Order - 8

not, in a vacuum, cause barrier collisions. The only evidence supporting USP's allegation is Wheeler's testimony [Dkt. #54, Tonglao Dec., at Ex. 1], where he explains that he did not feel the barrier deployment training was adequate. One day prior to the Tulley incident, an Air Force supervisor clearly instructed the guards that when one of them finds it reasonably justified to exclaim "Code-12," i.e. when one reasonably believes that a gate runner incident is taking place, the barrier is to be deployed. Martinez's decision to use the gate runner code had nothing to do with a lack of training and his ability to recognize a security threat, but was merely a poorly timed joke which, particularly in light of the previous day's instructions, caused Wheeler to deploy the barrier. There is no causal connection between the United States' formal training program and Tulley's injuries, and accordingly liability for Martinez's negligence rests solely on USP.

Even viewing the evidence in the light most favorable to the non-moving parties, the United States is immune from liability for Martinez's negligence under the independent contractor exception to the FTCA, and any lack of training for USP guards did not cause Tulley's injuries. Therefore, the United States' cross-motion for summary judgment regarding its lack of liability is GRANTED, and both USP's and Tulley's claims against the United States are **DISMISSED**. Because all claims against the United States are dismissed, its stipulated motion seeking continuance of trial is DENIED as moot.

### D.  Futility of USP's Proposed Amended Answer

USP seeks to amend its answer to add an affirmative defense based on the contributory fault of others, namely Martinez, and to add a cross-claim for damages against the United States based on comparative negligence. The United States opposes this motion, arguing that the amendments would be futile. The Federal Rules of Civil Procedure permit amendment "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has held that courts may deny a request for leave to amend where the amendment would be futile, or where the amended pleading would be subject to dismissal. *See Saul v. U.S.*, 928 F.2d 829, 843 (9th Cir. 1991). As previously discussed, USP is solely liable for Martinez's negligence under the doctrine of respondeat superior and the independent contractor exception to the FTCA, and any negligence

by United States employees did not cause Tulley's injuries. Therefore, because USP's amended answer would be futile, its motion for leave to amend is DENIED.

## CONCLUSION

Plaintiff's Motion for Partial Summary Judgment [Dkt. #30] on the issues of USP's liability and Plaintiff's lack of contributory negligence is GRANTED. USP's Motion for Leave to Amend Answer [Dkt. #38] is DENIED. The United States' Cross-Motion for Summary Judgment [Dkt. #40] is GRANTED, and all claims against the United States are DISMISSED with prejudice. The United States' Stipulated Motion for Continuance of Trial [Dkt. #58] is DENIED as moot.

**IT IS SO ORDERED.**

Dated this 9th day of August, 2010.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE